

FILED

DEC 1 7 2014

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                          CRIMINAL NO. *2:14-CR-00275*
                                    33 U.S.C. § 1319(c)(1)(A)
                                    33 U.S.C. § 1311
                                    33 U.S.C. § 407
FREEDOM INDUSTRIES, INC.            33 U.S.C. § 411
                                    33 U.S.C. § 1319(c)(2)(A)
                                    33 U.S.C. § 1318

I N F O R M A T I O N

The United States Attorney charges:

COUNT ONE
(Negligent Discharge of a Pollutant)

At all times relevant to this Information:

Freedom, Etowah River Terminal, and MCHM

1.    Defendant FREEDOM INDUSTRIES, INC. ("FREEDOM") was a
West Virginia corporation located in Charleston, West Virginia,
and engaged in the business of storing, selling, and transporting
chemicals that were to be used in various industries, including
the coal mining industry.

1

2.    Etowah River Terminal, LLC ("ERT") was a West Virginia limited liability company, or, at times, a general partnership.

3.    ERT was formed in approximately September 2001, to purchase and then operate an above-ground storage tank facility located at 1015 Barlow Drive, Charleston, West Virginia (the "Etowah Facility"), on the east bank of the Elk River.

4.    On December 31, 2013, ERT formally merged into FREEDOM. Prior to that date, and at all times pertinent to this Information, ERT acted on behalf of and with the intent to benefit FREEDOM, and was affiliated with and closely related to FREEDOM. Moreover, and among other things:

- FREEDOM and ERT shared common owners/members, as well as accountants and finance, administrative, and other personnel.

- The plant manager for ERT at the Etowah Facility was an employee of FREEDOM who reported to FREEDOM's president, and later, to FREEDOM's chief operating officer.

- FREEDOM rented warehouse, tank and office space from ERT at the Etowah Facility.

2

5.   ERT purchased the Etowah Facility from the Pennzoil-Quaker State Company in approximately the fall of 2001, and thereafter the facility was used as a bulk storage and distribution point for various substances.

6.   FREEDOM used the Etowah Facility to store and process chemicals and other substances, including a substance that was used in the coal mining industry as a cleansing agent and which consisted primarily of the chemical 4-methylcyclohexane methanol. That substance, both in the form as FREEDOM originally purchased it and in the form after FREEDOM processed it, was commonly referred to (and will be referred to hereinafter) as "MCHM."

7.   The safety data sheet for MCHM that was prepared by its manufacturer and which FREEDOM kept on hand, stated: "WARNING! HARMFUL IF SWALLOWED[,] CAUSES SKIN AND EYE IRRITATION[.]" The MCHM safety data sheet also stated: "Avoid release to the environment. . . . Prevent runoff from entering drains, sewers, or streams. Dike for later disposal."

8.   In addition, FREEDOM prepared its own safety data sheet for the MCHM, which stated that "[t]he material can cause skin and eye irritation," and further cautioned that "[t]his product

3

is considered hazardous under the OSHA HazCom Standard (29 CFR 1910.1200)." Under a section entitled "Accidental Release Measures," FREEDOM's safety data sheet stated, "Dike area of spill to prevent spreading and pump liquid to salvage tank."

9.    FREEDOM also indicated, on required reports submitted to the West Virginia Department of Homeland Security and Emergency Management, that the physical and health hazards associated with MCHM were "Immediate (acute)."

<u>The MCHM Spill Into the Elk River</u>

10.    In the morning of January 9, 2014, it was discovered that MCHM owned by FREEDOM had leaked from Tank 396 at the Etowah Facility into a containment area.

11.    A significant quantity of the MCHM breached containment, including a dike wall, ran down the riverbank and discharged into the Elk River via two discernible, confined, and discrete channels or fissures. The MCHM then flowed downstream.

12.    The water treatment and distribution plant of the West Virginia American Water Company ("WVAWC"), and an intake for that plant, were located approximately 1-1½ miles downstream from the Etowah Facility on the Elk River. Through the intake, WVAWC took

4

in water from the Elk River and treated it to supply potable water for thousands of residents in Charleston and surrounding areas.

13.  The MCHM from the Etowah Facility flowed into WVAWC's intake and treatment plant on the Elk River on January 9, 2014. As a result, at approximately 6:00 p.m. on January 9, 2014, the State of West Virginia issued a "do not use" advisory, which effectively denied water from WVAWC, for drinking, cooking and washing, to an estimated 300,000 residents within a nine-county area for several days.

## The Clean Water Act and the NPDES Program

14.  The Federal Water Pollution Control Act, commonly known as the Clean Water Act ("CWA"), codified at Title 33, United States Code, Sections 1251—1387, was enacted by Congress to restore and maintain the integrity of the Nation's waters and to prevent, reduce, and eliminate water pollution.

15.  The CWA prohibited the discharge of any pollutant into waters of the United States by any person, except in compliance with a permit issued under the National Pollutant Discharge Elimination System ("NPDES") by the United States Environmental

Protection Agency ("EPA") or an authorized state.

16. The CWA defined a "person" as an individual or corporation, among other things, 33 U.S.C. § 1362(5); the "discharge of a pollutant" as the addition of any pollutant to navigable waters, from any point source, 33 U.S.C. § 1362(12); a "point source" as any discernible, confined and discrete conveyance from which pollutants are discharged, for example a pipe, ditch, channel, conduit or discrete fissure, 33 U.S.C. § 1362(14); and a "pollutant" as, among other things, solid waste, chemical waste, and industrial waste discharged into water, 33 U.S.C. § 1362(6).

17. At all places relevant to this Information, the Elk River was a navigable water of the United States within the meaning of the CWA. 33 U.S.C. § 1362(7) and 40 C.F.R. § 122.2.

18. The EPA delegated the NPDES program to the State of West Virginia in May 1982, see 47 Fed. Reg. 22,363 (May 24, 1982). Thereafter, and at all relevant times, the NPDES program in West Virginia was administered by the West Virginia Department of Environmental Protection ("WVDEP").

19.  Pursuant to the NPDES delegation of authority, the WVDEP issued a "Multi-Sector General Water Pollution Control Permit," No. WV0111457 ("the NPDES Permit"), under which industrial activities could apply for individual registration and authority to operate. The NPDES Permit authorized permit holders to discharge storm water into navigable waters, subject to monitoring and reporting requirements for certain pollutants, but did not allow for the discharge of MCHM.

20.  FREEDOM, directly and through its agent ERT, operated the Etowah Facility pursuant to the NPDES Permit, under General Permit Registration Number WVG610920.  FREEDOM did not have any permit allowing for the discharge of MCHM into the Elk River.

### Negligent Operation of the Etowah Facility

21.  For many years and at all times pertinent to this Information, FREEDOM, through certain of its agents including ERT, operated the Etowah Facility in a negligent manner. That is, FREEDOM failed to exercise reasonable care and thus failed to satisfy its duties to operate the Etowah Facility in a safe and environmentally sound manner, failed to comply with the requirements of the NPDES Permit, and failed to prevent

unauthorized discharges of pollutants such as MCHM into the Elk River. More specifically, and among other things, FREEDOM failed to conduct a proper inspection of Tank 396 to examine and assess any corrosion, and consequently failed to repair and/or replace Tank 396; FREEDOM failed to repair and/or replace the containment wall that enclosed the tanks at the Etowah Facility and to ensure that the containment area was actually capable of containing a large spill within the facility; and FREEDOM failed to have adequate spill prevention materials on hand to deal with the significant leak of MCHM on January 9, 2014.

22. In addition, FREEDOM, through certain of its agents including ERT, failed to develop, maintain, and implement a Storm Water Pollution Prevention Plan ("SWPPP") for the Etowah Facility, as required by the NPDES Permit. As a result, FREEDOM failed to implement reasonable practices that would have been required by an SWPPP, such as:

- properly analyzing the spill potential of all substances, including MCHM, stored at the Etowah Facility;

- ensuring that the containment area within the dike wall would actually hold the contents of the largest tank, without spillage or leaking;

- conducting periodic inspections of and preventive maintenance on facility equipment and systems, including the tanks and the dike wall, the breakdown or failures of which might result in discharges of pollutants to surface waters; and

- conducting training of all personnel, including responsible corporate officers, to insure that all hands were well aware of the requirements of the SWPPP and the importance of pollution prevention.

23.  The numerous ways in which FREEDOM, through certain of its agents including ERT, failed to exercise reasonable care in relation to its operation of the Etowah Facility and failed to comply with the NPDES permit were proximate causes of the significant leak of MCHM from Tank 396 and the resulting discharge of MCHM into the Elk River on January 9, 2014.

## Criminal Violation of the CWA

24.  From on or about January 1, 2002, through on or about January 9, 2014, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia, defendant FREEDOM INDUSTRIES, INC., acting through certain employees, officers, and agents, who were acting within the scope of their employment and agency and with the intent to benefit FREEDOM INDUSTRIES, INC., negligently discharged a pollutant, that is, MCHM, which discharge occurred on or about January 9,

2014, from point sources into the Elk River, a navigable water of the United States, without a permit issued under Title 33 of the United States Code authorizing such discharge.

In violation of Title 33, United States Code, Sections 1319(c)(1)(A) and 1311.

**COUNT TWO**
**(Unlawful Discharge of Refuse Matter in Navigable Waters)**

1.  The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 23 of Count One of this Information as if fully set forth herein.

2.  From on or about January 1, 2002, through on or about January 9, 2014, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia, defendant FREEDOM INDUSTRIES, INC., acting through certain employees, officers, and agents, who were acting within the scope of their employment and agency and with the intent to benefit FREEDOM INDUSTRIES, INC., unlawfully discharged and deposited, and caused to be discharged and deposited, from the shore, certain refuse matter, that is, MCHM, into the Elk River, a navigable water of the United States.

In violation of Title 33, United States Code, Sections 407 and 411.

## COUNT THREE
### (Knowing Violation of Permit Condition)

1.     The United States Attorney re-alleges and incorporates by reference paragraphs 1 through 23 of Count One of this Information as if fully set forth herein.

2.     From approximately February 2002 until on or about January 9, 2014, at or near Charleston, Kanawha County, West Virginia, and within the Southern District of West Virginia, defendant FREEDOM INDUSTRIES, INC., acting through certain employees, officers, and agents, who were acting within the scope of their employment and agency and with the intent to benefit FREEDOM INDUSTRIES, INC., knowingly violated a permit condition implementing sections of the Clean Water Act (33 U.S.C. §§ 1311 and 1318), in a permit issued by the State of West Virginia under 33 U.S.C. § 1342, that is, NPDES Permit No. WV0111457, General Permit Registration Number WVG610920, by failing to develop, maintain, and implement a Storm Water Pollution Prevention Plan ("SWPPP") for the Etowah Facility as required by the NPDES Permit and consequently by failing to implement reasonable practices that would have been required by an SWPPP.

In violation of Title 33, United States Code, Sections
1319(c)(2)(A), 1311, and 1318.

UNITED STATES OF AMERICA

R. BOOTH GOODWIN II
United States Attorney

By: _____
PHILIP H. WRIGHT
Assistant United States Attorney

13