```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                        AT CHARLESTON


_____x
                              :
UNITED STATES OF AMERICA,      :        Criminal Action
                              :
             Plaintiff,        :        No.  2:14-cr-00275
                              :
v.                            :
                              :        Date:  March 23, 2015
FREEDOM INDUSTRIES, INC.,      :
                              :
             Defendant.        :
_____x


                  TRANSCRIPT OF PLEA HEARING HELD
          BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
                 UNITED STATES DISTRICT COURT
                  IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:          AUSA PHILIP H. WRIGHT
                             AUSA ERIC P. BACAJ
                             U.S. Attorney's Office
                             P.O. Box 1713
                             Charleston, WV  25326-1713


For the Defendant:           ROBERT R. LEIGHT, ESQ.
                             PIETRAGALLO GORDON ALFANO BOSICK &
                             RASPANTI
                             One Oxford Centre, 38th Floor
                             301 Grant Street
                             Pittsburgh, PA 15219


Probation Officer:           Jeff Gwinn


Court Reporter:              Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.
```

```
1              PROCEEDINGS had before The Honorable Thomas E. Johnston,

2    Judge, United States District Court, Southern District of West

3    Virginia, in Charleston, West Virginia, on March 23, 2015, at

4    3:05 p.m., as follows:

5              COURTROOM DEPUTY CLERK:  The matter before the Court is

6    the United States of America v. Freedom Industries, criminal

7    action number 2:14-cv-00275, scheduled for a plea hearing.

8              THE COURT:  Good afternoon.  Will counsel please note

9    their appearances?

10             MR. WRIGHT:  Good afternoon, Your Honor.  Philip Wright

11   and Eric Bacaj on behalf of the United States.

12             MR. LEIGHT:  Robert Leight on behalf of Freedom

13   Industries.

14             THE COURT:  Good afternoon.  Mr. Welch, I presume?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Will you please stand, and I will ask the

17   deputy clerk to administer an oath to you at this time.

18             COURTROOM DEPUTY CLERK:  Please raise your right hand.

19                   MARK WELCH, DEFENDANT, SWORN

20             THE COURT:  You may be seated.

21        Mr. Welch, do you understand that you are now under oath and

22   you must tell the truth and, if you testify falsely, you may face

23   prosecution for perjury or for making a false statement?

24             THE DEFENDANT:  I understand.

25             THE COURT:  All right.  And throughout the course of
```

1    this hearing, I'm going to be asking you a number of questions,

2    so -- and I want to make sure that you and I are communicating

3    clearly.  So, if at any time I ask a question that you don't

4    understand, or anything else occurs in this proceeding that you

5    don't understand, I want you to feel free to speak up and seek

6    clarification.

7         Also, if at any time you need to confer with your counsel,

8    I'll be pleased to pause the proceedings to allow you to do so.

9         Do you understand all that?

10             THE DEFENDANT:  Yes, I understand.

11             THE COURT:  All right.  A couple of things I want to

12   deal with up front.  One is, I want to make note of the fact that

13   -- well, first of all, the plea agreement itself, Mr. Wright, am

14   I correct in saying, has not changed since the courtesy copy

15   provided to my chambers?

16             MR. WRIGHT:  The plea agreement has not, Your Honor.

17             THE COURT:  All right.  And it includes the Written

18   Consent to Action without meeting of the Board of Directors of

19   Freedom Industries, which appears to be a document authorizing

20   the -- it doesn't mention the person by name, but it authorizes

21   the Chief Restructuring Officer to act on behalf -- this is a

22   summary -- to act on behalf of the corporation in this proceeding

23   and related matters; is that correct?

24             MR. WRIGHT:  Yes, Your Honor.  I submitted a copy of

25   that resolution as Plea Agreement Exhibit C.

1           THE COURT:  All right.  And you also, as I understand

2     it, and this was -- this was new, the only thing that was new

3     from the original -- or the plea agreement that was provided as a

4     courtesy copy is an affidavit of J. Clifford Forrest, III

5     essentially attesting to the action of the Board of Directors?

6           MR. WRIGHT:  Yes, Your Honor.  I supplied that

7     affidavit, but I also supplied the original Written Consent to

8     Action, a copy of which is Exhibit C.  The original doesn't have

9     an exhibit notation on the bottom of it.

10          THE COURT:  All right.

11       Now, Mr. Welch, are you the Chief Restructuring Officer of

12    Freedom Industries?

13          THE DEFENDANT:  Yes, I am.

14          THE COURT:  All right.

15       All right.  Is there any -- so can we agree then that the --

16    and may I so find that the -- that Mr. Welch is appearing before

17    me as an officer or authorized employee of Freedom Industries,

18    Inc.?

19          MR. LEIGHT:  Yes, sir.

20          MR. WRIGHT:  Yes, Your Honor.

21          THE COURT:  And that Mr. Welch has been empowered by

22    the Board of Directors, duly empowered by the Board of Directors,

23    to enter a guilty plea on behalf of Freedom Industries today?

24          MR. WRIGHT:  Yes, Your Honor.

25          MR. LEIGHT:  Yes, sir.

```
1              THE COURT:  All right.  And that is pursuant to a valid
2    resolution which we just discussed, correct?
3              MR. LEIGHT:  Yes, sir.
4              MR. WRIGHT:  Yes, Your Honor.
5              THE COURT:  All right.
6        All right.  The other matter I want to just address up front
7    is that I don't think I've ever taken a plea from a corporation
8    like today, so I've tried to tailor my colloquy as best that I --
9    that I normally do with individuals as best I can.  Some of it is
10   just naturally going to sound awkward, so just bear with me on
11   that.
12       For example, the first question I have is, do we need to go
13   through a competency colloquy?  I kind of came to the conclusion
14   that I might as well.  It might be slightly truncated, but I
15   think -- I suppose that one can argue that Mr. Welch needs to be
16   competent to act on behalf of the corporation.  So I'm going to
17   proceed and, again, tailor this in a way, as best I can, to not
18   unduly lengthen it or make it any more awkward than it has to be.
19       All right.  Mr. Welch, how old are you?
20             THE DEFENDANT:  I am 49.
21             THE COURT:  Can you briefly describe your educational
22   background?
23             THE DEFENDANT:  An undergraduate in Accounting, with a
24   CPA, certified general professional, and I work for a firm called
25   Morris-Anderson & Associates.
```

```
1              THE COURT:  And what do you do for them?

2              THE DEFENDANT:  I do restructuring.  I do turnaround.

3    I do forensic analysis.  I do litigation support, and mostly in

4    the restructuring.

5              THE COURT:  Would it be correct to say that you've been

6    brought in as a consultant to shepherd Freedom Industries

7    through, among other things, its bankruptcy proceedings?

8              THE DEFENDANT:  Yes, that's correct.

9              THE COURT:  Okay.  And are you also participating in

10   that capacity in the Freedom Industries bankruptcy proceedings?

11             THE DEFENDANT:  Yes, I am.

12             THE COURT:  All right.  Have you been authorized by the

13   Bankruptcy Court, as well, to participate as the Chief

14   Restructuring Officer?

15             THE DEFENDANT:  Yes.  I went through a retention with

16   the court, Bankruptcy Court.

17             THE COURT:  All right.  And is Freedom Industries

18   considered a debtor in possession in that proceeding?

19             THE DEFENDANT:  Yes, it is.

20             THE COURT:  All right.

21        All right.  Just for the record, can you read and write and

22   understand the English language?

23             THE DEFENDANT:  Yes, I can.

24             THE COURT:  All right.  And, aside from your work as a

25   consultant of this nature, can you otherwise describe your work
```

1    experience for me?

2             THE DEFENDANT:  Yes.  I started with the federal

3    government, Office of Inspector General, worked for the Office of

4    Inspector General.  I worked as a -- I worked for an airline, and

5    then 16 years at Morris-Anderson.

6             THE COURT:  All right.  Have you taken any medicine or

7    drugs or consumed any alcoholic beverages within the last

8    24 hours that would in any way affect your -- have side effects

9    or otherwise in any way affect your ability to fully participate

10   in this hearing today?

11            THE DEFENDANT:  I've taken cold medicine.  I have the

12   flu, but other than that, no, it doesn't affect my abilities.

13            THE COURT:  You're fully lucid?

14            THE DEFENDANT:  Oh, yeah.

15            THE COURT:  All right.  Have you ever been treated for

16   any mental illness or addiction to drugs of any kind?

17            THE DEFENDANT:  No, I have not.

18            THE COURT:  Do you know where you are and why you are

19   here today?

20            THE DEFENDANT:  Yes, I do.

21            THE COURT:  Do you have any hearing impairment or other

22   disability which would in any way prevent you from fully

23   participating in this hearing today?

24            THE DEFENDANT:  I do not.

25            THE COURT:  Mr. Leight, do you have any reason to

1   question the competence of Mr. Welch in his capacity as a

2   representative of Freedom Industries, Inc.?

3              MR. LEIGHT:  I do not, Your Honor.

4              THE COURT:  All right.  I established earlier that the

5   original of the plea agreement has been tendered to the Court.

6       Mr. Welch, is that your signature that appears on the ninth

7   and final page of the plea agreement itself?

8              THE DEFENDANT:  Yes, it is.

9              THE COURT:  And are those your initials appearing on

10  the other pages of the plea agreement?

11             THE DEFENDANT:  Yes, they are.

12             THE COURT:  And, on behalf of the corporation, have you

13  read and reviewed with Mr. Leight each of the 17 paragraphs of

14  the plea agreement and the exhibits attached thereto?

15             THE DEFENDANT:  Yes, I have.

16             THE COURT:  And do you wish to have the various terms

17  of the plea agreement orally stated on the record, or do you

18  believe that that's unnecessary?

19             THE DEFENDANT:  I believe that's unnecessary.

20             THE COURT:  And, on behalf of Freedom Industries, Inc.,

21  do you understand and agree with all of the terms and provisions

22  contained in the plea agreement?

23             THE DEFENDANT:  Yes, I do.

24             THE COURT:  Have you discussed those terms and

25  provisions with the officers and directors of Freedom Industries?

1            THE DEFENDANT:  Yes, I have.

2            THE COURT:  And do you believe that they fully

3  understand those terms and provisions, as well?

4            THE DEFENDANT:  Yes, they do.

5            THE COURT:  Mr. Leight, have you reviewed each of the

6  17 paragraphs of the plea agreement and its exhibits --

7            MR. LEIGHT:  I have, Your Honor.

8            THE COURT:  -- with your client?

9            MR. LEIGHT:  I have.

10            THE COURT:  All right.  And, Mr. Leight and Mr. Wright,

11  is there any reason why either of you believe that the various

12  terms of the plea agreement should be orally stated on the

13  record?

14            MR. WRIGHT:  No, Your Honor.

15            MR. LEIGHT:  No, Your Honor.

16            THE COURT:  All right.  Very well.

17       Nonetheless, Mr. Welch, I want to go over with you some

18  provisions of the plea agreement, beginning with Section 10,

19  which appears on Page 5, and is entitled "Stipulation of Facts

20  and Wavier of Federal Rules of Evidence 410".

21       Now, this section relates to a couple of different matters,

22  the first of which is the Stipulation of Facts, which is attached

23  to the plea agreement as Exhibit B, and I want to turn your

24  attention to that document now.

25       That is an eight-page document and, on the eighth page, is

1    that your signature which appears on behalf of Freedom

2    Industries?

3                THE DEFENDANT:  Yes, it is.

4                THE COURT:  And have you read the Stipulation of Facts?

5                THE DEFENDANT:  Yes, I have.

6                THE COURT:  And do you agree that all of the facts

7    contained in the stipulation are true?

8                THE DEFENDANT:  Yes, sir.  Yes.

9                THE COURT:  All right.  A little bit about what will be

10   happening from here on out.  I will be asking the probation

11   officer to prepare a Presentence Investigation Report.  That

12   report will contain detailed recommended factual findings

13   regarding this offense and Freedom's background, among other

14   things.

15        Ultimately --

16        Mr. Leight?

17                MR. LEIGHT:  Your Honor, I've discussed with Mr.

18   Wright, and I believe Freedom would be willing to waive a

19   Presentence Report due to the fact it is a bankrupt corporation,

20   if the Court would accept the plea agreement.  It really would be

21   unnecessary.

22                THE COURT:  I understand your willingness to do that.

23   Why would I have to do that, though, because I have to -- and, I

24   assume, as with any other sentencing, I have to consider the

25   factors under Section 3553(a) of Title 18.  In order for me to be

1    able to effectively do that, I need information, which is what I

2    get from the presentence report.  So, tell me why I shouldn't do

3    that.

4             MR. LEIGHT:  Well, Your Honor, again, Freedom is a

5    bankrupt corporation that will be absolved within a short period

6    of time.  The 35 -- we've reached a plea agreement in this case

7    and, if the Court would accept the plea agreement, the sentencing

8    upon Freedom is that it would pay a minimal amount in a fine, and

9    that restitution would be handled through the Bankruptcy Court.

10   To me, it just seems like an unnecessary use of the Court's

11   resources.

12            THE COURT:  I probably could have reached the same

13   conclusion when you told me Freedom was going to be dissolved,

14   but the -- I have to -- I have a considerable amount of

15   discretion in -- I mean, I really don't know that I understand

16   what the point of putting a corporation, especially one that's

17   going to be dissolved, on probation is, but that's nonetheless in

18   the plea agreement.  So, I've got some discretion I've got to

19   exercise there.

20       And, certainly, I can impose a fine, and I have some

21   discretion I have to exercise there.  And, frankly, other than

22   what little I've paid attention to media accounts on this, I

23   don't know much about Freedom Industries and, in order for me to

24   effectively exercise my discretion, I think I need a Presentence

25   Report.  I need information, which I don't have.  So I'm not

1    going to take you up on that.

2              MR. LEIGHT:  Okay.

3              THE COURT:  So, let me get back to where I was with

4    regard to the Stipulation of Facts, Mr. Welch.  I will be asking

5    the probation officer to prepare a Presentence Investigation

6    Report.  That report will -- that may be an unusual report, but

7    I'm going to do one, nonetheless, and that report will contain,

8    among other things, recommended factual findings regarding this

9    offense and the background and information about Freedom

10   Industries as a corporation.

11        Ultimately, I will make factual findings at sentencing based

12   at least in part on the recommendations contained in the

13   Presentence Report.

14        Now, you and the government -- you, on behalf of the

15   company, and the government have reached an agreement regarding

16   certain facts contained in this stipulation, but I want you to

17   understand that, in this process, neither the probation officer,

18   nor this Court, are bound by that Stipulation of Facts.  Do you

19   understand that?

20             THE DEFENDANT:  Yes, I do.

21             THE COURT:  And do you further understand that if I

22   make findings of fact at sentencing that are different from or

23   inconsistent with the facts contained in the stipulation, Freedom

24   Industries will still be bound by its guilty plea and would have

25   no right to withdraw it?

1      (Counsel & defendant confer.)

2           THE DEFENDANT:  Yeah, I understand.  Yes.

3           THE COURT:  All right.  Now, the other matter addressed

4      then in Section 10 of the plea agreement is a Waiver of Federal

5      Rule of Evidence 410.

6      Now, first of all, do you understand that a "waiver" is a

7      legal term that means the company is giving something up?

8           THE DEFENDANT:  Yes, I do.

9           THE COURT:  All right.  And Rule 410 generally provides

10     that information or documents regarding plea negotiations, and

11     this Stipulation of Fact would fall into that category, is

12     generally not admissible at trial.  In other words, the

13     government can't use that sort of thing against Freedom

14     Industries at trial.

15     However, if Freedom withdraws from this agreement or if the

16     agreement is no longer any good because Freedom has violated one

17     or more of its provisions and there is a subsequent trial, under

18     this waiver, the government would be allowed to present the

19     Stipulation of Facts in its case in chief or for other purposes

20     at that trial.

21     Do you understand that waiver?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  All right.  Next, I want to refer you to

24     Section 11 of the plea agreement, which begins on Page 5 and runs

25     over onto Page 6, and is entitled "Agreement on Sentencing

1    Guidelines".  Now, has your attorney talked with you about the

2    federal sentencing guidelines and how they generally work, at

3    least as it relates to this case?

4              THE DEFENDANT:  Yes.  Yes, he has.

5              THE COURT:  All right.  And has he shown you that chart

6    in the back of the book?

7              THE DEFENDANT:  Oh, yes.  Yes.  It goes back a bit.

8    Been awhile.  Yes, he did.  Yes, he has.

9              THE COURT:  All right.  And did he explain to you how

10   the guidelines would be calculated based on that chart?

11             THE DEFENDANT:  Yes.

12             THE COURT:  All right.

13        All right.  Well, I'm going to go through that.  I normally

14   would go through that for the record on this occasion, as well.

15        The -- if you'll recall from that chart, on the left side of

16   the page, there's a series of numbers that run from low to high

17   as you go down the page, and those are offense levels, and the

18   offense level is calculated by starting with a Base Offense

19   Level, or a starting point, and that can be adjusted upward or

20   downward, depending on the facts and circumstances of the case,

21   to arrive at an adjusted offense level.

22        I don't know if this applies or not, but the next thing

23   that's generally considered is a reduction for acceptance of

24   responsibility.  Has your attorney talked with you about that?

25             THE DEFENDANT:  Yes.  Yes, he has.

1          THE COURT:  All right.  And then, one generally arrives

2     then at a Total Offense Level.  Then, you go up to the top of the

3     chart, and there are six criminal history categories, and I don't

4     even know how that would apply to a corporation, but I'm assuming

5     the corporation would fall into a criminal history category of I

6     probably, and then you combine the criminal history category,

7     whatever it is, with the Total Offense Level, and arrive at a --

8     at a point in the chart, some of which provides for probation.

9          It also -- that calculation also would arrive at a guideline

10    -- normally arrive at a guideline fine range.  I don't know if

11    that -- if the guideline fine range applies in this case or not.

12         At any rate, has your attorney explained all of these things

13    to you?

14          THE DEFENDANT:  Yes, he has.

15          THE COURT:  All right.  And, I guess, the one thing

16    left that I can think of that might still apply, as far as the

17    guidelines go, is that, assuming there is a guideline fine range,

18    I would have the authority to fine the corporation within that

19    range.  I would also have the authority to fine the corporation

20    outside of that range, either above it or below it and, if I do

21    that, that's generally known as a departure or a variance.

22         Now, do you understand all that?

23          THE DEFENDANT:  I do understand that.

24          THE COURT:  All right.  And has your attorney explained

25    all of those things to you, as the authorized agent of the

```
1    corporation?

2            THE DEFENDANT:  I understand the fine.  However,

3    working through the -- Freedom is a bankrupt estate out of

4    limited resources.  So, within the range we talked earlier about,

5    you know, different fine levels and trying to budget it and

6    trying to make this work, extreme fines would be very difficult

7    for the estate.  I understand why it's done and I understand the

8    purpose, but I have limited resources.  That's the only comment

9    I'd like to make.

10           THE COURT:  Well, what -- I appreciate that.  Right

11   now, I'm just trying to find my way through this guidelines

12   discussion in this case.

13           THE DEFENDANT:  I'm sorry.

14           THE COURT:  Well, do you understand the -- my point is

15   that I have the authority to give you a guide -- give the company

16   -- I'm trying to keep in mind that you're not the defendant here.

17           THE DEFENDANT:  Uh-huh.

18           THE COURT:  I have the authority to give the company a

19   fine within the guideline range, but I also, under some

20   circumstances, would have the authority to give one above or

21   below the guideline range.  Do you understand that?

22           THE DEFENDANT:  Yes, I understand that.

23           THE COURT:  All right.  Well, with that in mind, the

24   Presentence Report will contain a guideline calculation and,

25   ultimately -- a recommended guideline calculation and,
```

1    ultimately, at sentencing, I will make guideline findings based

2    at least in part on that recommendation.

3        Now, this is similar to the Stipulation of Facts in that you

4    have reached an agreement here in Section 11 of the plea

5    agreement with the government regarding one or more -- it

6    actually looks like several provisions of the guidelines, but I

7    want you to understand that, in this process, neither the

8    probation officer, nor this Court, are bound by this guideline

9    calculation.  Do you -- or this agreement on the guidelines.  Do

10   you understand that?

11             THE DEFENDANT:  Yes, I do understand that.

12             THE COURT:  And do you further understand that, at

13   sentencing, if I make guideline findings that are different from

14   on inconsistent with the agreement contained in Section 11,

15   Freedom Industries will still be bound by its guilty plea and

16   would have no right to withdraw it?  Do you understand that?

17             THE DEFENDANT:  Yes, I do understand that.

18             THE COURT:  All right.

19       All right.  Before we go forward with this, I have a

20   question that's sort of peculating in the back of my mind, and

21   that is, that it seems to me that the only -- the only penalty of

22   any significance that can be imposed in this case is a fine and

23   what is the interaction with any fine that I may impose with

24   what's happening in Bankruptcy Court?

25             MR. WRIGHT:  Your Honor, I don't want to mis-state

1    bankruptcy law, but if you impose a fine, I think they have to

2    pay it, and I don't believe it's dischargeable.

3          THE COURT:  Mr. Leight, is that your understanding?

4          MR. LEIGHT:  It is, Your Honor.

5       (Counsel and defendant confer.)

6          MR. LEIGHT:  Mr. Welch would ask the question, if this

7    would be considered a pre-petition obligation to the company or

8    not, which would make a difference.

9          MR. WRIGHT:  Your Honor, just off the top of my head,

10   I'm going to say it's not a pre-petition obligation because it

11   wasn't -- it won't be imposed until --

12         THE COURT:  Well, at least factually, I would have to

13   agree with you.  Whether or not that legally is the case, perhaps

14   there may be a difference, but factually, certainly, that's going

15   to be true, but I understand the petition has long since been

16   filed.

17         MR. LEIGHT:  Mr. Welsh -- maybe it would be better for

18   him to address the Court, but he's stated that this was an

19   obligation based upon something that the corporation did before

20   the date of the bankruptcy.

21         THE DEFENDANT:  There's -- excuse me.  Excuse me.  I'm

22   not an attorney.  I'm just -- but I deal with bankruptcy a lot.

23   If there's an automatic stay in place and the action happened

24   before bankruptcy, I have to advise my bankruptcy counsel.

25         THE COURT:  Was there -- are criminal proceedings

 1   subject to the automatic stay?

 2              MR. LEIGHT:  I believe they are, Your Honor.

 3              MR. WRIGHT:  I don't think they are.

 4              THE DEFENDANT:  The fine would be limiting as to the

 5   bankruptcy estate.

 6              THE COURT:  Well, I suppose that's another good reason

 7   for a Presentence Report.  We'll find out how much money Freedom

 8   Industries has available for a fine, as you have indicated that

 9   it's limited.

10      All right.  Let's press forward with this plea agreement.

11   Section -- well, I want to move on to Section 12 of the plea

12   agreement, which begins on Page 6 and runs over onto Page 7, and

13   is entitled "Waiver of Appeal and Collateral Attack".

14       Has your attorney explained to you what an "appeal" and

15   what a "collateral attack" are as to the authorized agent of the

16   corporation?

17              THE DEFENDANT:  Yes.

18              THE COURT:  And do you believe you understand those two

19   procedures?

20              THE DEFENDANT:  Yes, I do.

21              THE COURT:  All right.  Well, just for the record, I'm

22   going to run through them anyway.  I want to just briefly

23   describe those two procedures.

24       An "appeal" is a procedure by which a party to case before a

25   District Court like this one and, in a criminal case, it is often

1    the defendant, goes to the Court of Appeals, or the next level up

2    of the court system, and argues that certain errors or mistakes

3    may have taken place in their criminal case before the District

4    Court.

5         A "collateral attack" is a similar, but it is a separate

6    civil proceeding, sometimes referred to as a "habeas corpus

7    petition", in which a defendant may also argue that certain

8    errors or mistakes may have taken place in their criminal case

9    before the District Court.

10        Now, do you understand those two procedures, as I've

11   described them?

12             THE DEFENDANT:  Yes, I do.

13             THE COURT:  All right.  With that in mind then, the

14   first paragraph of Section 12 contains an appeal waiver and I

15   want to go over that with you now.

16        Do you understand that Freedom Industries waives the right

17   to appeal its conviction and any fine imposed, or term of

18   probation, or the manner in which the sentence was determined on

19   any ground whatsoever, with one exception:  Freedom may appeal a

20   -- any sentence that exceeds the maximum penalties set forth by

21   statute.  Do you understand that waiver?

22             THE DEFENDANT:  Yes, I do understand that.

23             THE COURT:  Anything about that waiver that, on behalf

24   of the corporation, that you don't understand or that you have

25   questions about?

1          THE DEFENDANT:  No.  I understand it.

2          THE COURT:  All right.  And do you believe that the

3     appropriate officers and directors of the corporation understand

4     that waiver?

5          THE DEFENDANT:  Yes.  Yes, I do.

6          THE COURT:  All right.  Do you also understand that

7     under the second paragraph of Section 12, Freedom Industries may

8     not file a later civil proceeding challenging its plea,

9     conviction or sentence?

10          THE DEFENDANT:  Yes.  Yes, I do.

11          THE COURT:  All right.  Finally, do you understand, on

12     behalf of Freedom Industries, that it is in no way waiving its

13     right to claim ineffective assistance of counsel on appeal or by

14     collateral attack?

15          THE DEFENDANT:  Yes.  Yes, I do understand that.

16          THE COURT:  All right.  Section 13, now, that's on Page

17     7, and it's entitled "Waiver of FOIA and Privacy Right".  Now,

18     this waiver means that Freedom Industries cannot go back after

19     this case is over and seek documents or other information about

20     the case from the government even with a Freedom of Information

21     Act request.  Do you understand that?

22          THE DEFENDANT:  Yes, I do.

23          THE COURT:  All right.  Mr. Leight, have you thoroughly

24     reviewed the plea agreement with your client?

25          MR. LEIGHT:  I have, Your Honor.

1          THE COURT:  And do you believe that Mr. Welch and the

2     officers and directors of Freedom Industries fully understand the

3     various terms and provisions of the plea agreement, including the

4     waivers and other matters that I have gone over with Mr. Welch

5     today?

6          MR. LEIGHT:  I do, Your Honor.

7          THE COURT:  Mr. Welch, have you reviewed the plea

8     agreement in detail with Mr. Leight?

9          THE DEFENDANT:  Yes, I have.

10         THE COURT:  And do you believe that you and the company

11    have had adequate time to discuss this case fully with Mr.

12    Leight?

13         THE DEFENDANT:  Yes.  Yes, we have.

14         THE COURT:  And has he answered any questions that you

15    and the company have had about the case?

16         THE DEFENDANT:  I'm sorry?

17         THE COURT:  Has Mr. Leight answered any questions that

18    you and the company have had about the case?

19         THE DEFENDANT:  Yes.  Yes, he has.

20         THE COURT:  Mr. Welch, has anything further been agreed

21    to, either orally or in writing, that is not contained in the

22    plea agreement, at least as it relates to this criminal

23    prosecution?

24         THE DEFENDANT:  Not that I'm aware of.

25         THE COURT:  All right.  I will order that the plea

1    agreement be filed.

2          I will find that Mr. Welch, on behalf of the defendant,

3    understands and agrees with the terms contained in the plea

4    agreement.

5          I will defer accepting or rejecting the plea agreement until

6    sentencing, after the Presentence Report has been received and

7    considered.

8          Now, Mr. Welch, on behalf of Freedom Industries, have you

9    received and read and reviewed with your attorney the

10   information, or charging document, that has been proposed?

11              THE DEFENDANT:  Yes, I have.

12              THE COURT:  And do you understand the charges contained

13   in the information?

14              THE DEFENDANT:  Yes, I do.

15              THE COURT:  And would you like me to read the

16   information or will you waive the reading of the information?

17              MR. LEIGHT:  We'll waive it, Your Honor.

18              THE COURT:  All right.  As I understand it, Freedom

19   Industries will be pleading guilty to three counts.  Count 1

20   charges negligent discharge of a pollutant in violation of 33 U.

21   S. C. Section 1319(c)(1)(A) and 1311; and Count 2 charging

22   unlawful discharge of refuse matter in violation of 33 U. S. C.

23   Section 407 and 411; and Count 3, knowing violation of a permit

24   condition in violation of 33 U. S. C. Sections 1319(c)(2)(A),

25   1311 and 1318.  Now, I want to go over those charges and that

1    statute in just a little bit more detail.

2         With regard to Count 1, Section 1319(c)(1)(A) provides in

3    pertinent part that:

4         Any person who negligently violates Section 1311 of this

5    title shall be punished by a fine not less than $2,500.00, nor

6    more than $25,000.00 per day of violation, or by imprisonment for

7    not more than one year, which wouldn't apply here, or by both.

8         Section 1311 of Title 33 United States Code provides in

9    pertinent part that:

10        Except as in compliance with this section, and certain other

11   sections of this title, the discharge of any pollutant by any

12   person shall be unlawful.

13        Now, in order to prove that charge against Freedom

14   Industries, the government would have to prove the following

15   elements, each beyond a reasonable doubt, and they are:

16        First, that a pollutant was discharged from a point source

17   into waters of the United State.

18        And, second, the discharge did not occur pursuant to a

19   permit;

20        And, third, Freedom Industries' negligent conduct

21   proximately caused the discharge.

22        I now want to share with you some definitions that apply to

23   what I have just told you.

24        A "pollutant" includes solid wastes, chemical wastes, and

25   industrial, municipal, and agricultural wastes.

1    To "discharge" means to add to the navigable waters of the
2  United States, the contiguous zone, or the ocean.

3    The term "navigable waters of the United States" includes
4  interstate waters, waters which have been or may be susceptible
5  to use in interstate commerce, and tributaries of such waters.

6    A "point source" means any discernible, confined and
7  discrete conveyance, including but not limited to, any pipe,
8  ditch, channel, tunnel, conduit, well, discrete fissure,
9  container, rolling stock, concentrated animal feeding operation,
10 or vessel or other floating craft, from which pollutants are or
11 may be discharged.

12   A "permit" is a permit issued under the National Pollutants
13 Discharge Elimination System by the federal government or a state
14 government.

15   An act is done with "negligence" when a person or, in this
16 case, a company, fails to exercise the degree of care that a
17 person of ordinary prudence would have exercised in similar
18 circumstances.

19   Next, with regard to Count 2, 33 U. S. C. 407 provides in
20 pertinent part that:

21   It shall be unlawful to cause to be discharged or deposited
22 from the shore any refuse matter of any kind or description
23 whatever other than that flowing from streets and sewers and
24 passing therefrom in a liquid state, into any navigable water of
25 the United States without a permit or in violation of a permit.

1        Now, in order to prove that charge against Freedom

2   Industries, the government would have to prove the following

3   elements of that crime, each beyond a reasonable doubt:

4        Freedom Industries caused refuse to be discharged or

5   deposited into a navigable water of the United States;

6        And, second, Freedom Industries did so without a permit or

7   in violation of a permit.

8        Now, I want to share with you some definitions that apply to

9   this charge.

10        The word "cause" means that the result was a probable

11   consequence of Freedom Industries' conduct.

12        The word "refuse" includes all foreign substances and

13   pollutants apart from those flowing from streets and sewers and

14   passing therefrom in a liquid state.

15        "Discharge" means to pour forth or emit.

16        "Deposit" means to lay, place, or throw something down.

17        The term "navigable waters" means the waters of the United

18   States, including the territorial seas.

19        A "permit" is a permit issued by the U. S. Army Corps of

20   Engineers.

21        Finally, Count 3, 33 U. S. C. Section 1319(c)(2)(A) provides

22   in pertinent part that:

23        Any person who knowingly violates Section 1311 or 1318 of

24   this title, or certain other sections, or any permit condition

25   implementing any of such sections shall be guilty of a crime

1     against the United States.

2          Now, in order to prove that charge against Freedom

3     Industries, the government would have to prove the following

4     elements, each beyond a reasonable doubt, and they are:

5          First, that Freedom Industries discharged a pollutant from a

6     point source into the waters of the United States;

7          And, second, Freedom Industries did so without a permit or

8     in violation of a permit;

9          And, finally, that Freedom Industries did so knowingly.

10         Now, I want to share with you some definitions that apply to

11    what I have just told you.

12         I have already defined "discharge".  I've already defined

13    "pollutant".  I've already defined "point source".

14         For purposes of this count, a "permit" is a permit issued

15    under the National Pollutants Discharge Elimination System by the

16    federal government or a state government.

17         An act is done "knowingly" if done voluntarily and

18    intentionally, and not because of mistake, or accident, or other

19    innocent reason, although it is not necessary that the government

20    prove that Freedom Industries knew that its conduct was illegal.

21         Finally, with regard to all three counts, under the doctrine

22    of respondeat superior, a corporation may be held criminally

23    liable for the criminal acts of its agents.  To hold a

24    corporation liable for these actions, the government must

25    establish that the corporate agent's actions were:

1          One, acts of the kind which he is authorized to perform;

2          And, two, were intended, at least in part, to benefit the

3    corporation.

4          Any objection to the elements and definitions as I have

5    described them?

6                MR. WRIGHT:  Your Honor, I think Count 3 is slightly

7    different from the way you stated it.  I believe that the

8    elements for Count 3, the knowing violations of the permit, would

9    be required by the defendant to have knowingly violated a

10   condition implementing certain sections of the Clean Water Act --

11   and we've charged Sections 1311 and 1318 -- and then the permit

12   was issued pursuant to the National Pollutants Discharge

13   Elimination System and that they did so knowingly.  I don't think

14   discharge is a necessary element for Count 3.

15               THE COURT:  All right.  Well, I need to take a look at

16   that then.  I want to get this right.

17               MR. LEIGHT: Your Honor, either way, the company admits

18   to either/or.

19               THE COURT:  Well, you know, tempting though it is, I'm

20   not just going to throw up my hands and throw out the formalities

21   that are required for an appropriate plea colloquy.  One of those

22   things is, I have to adequately describe the elements to the

23   defendant.  Now, I don't think I can do that, and I certainly

24   can't do it off the cuff, so I need to take a look at this.  I've

25   got to get this right, so I don't think we can finish this today.

1         So, Mr. Leight, I assume you're from out of town.

2               MR. LEIGHT:  Pittsburgh, Your Honor.

3               THE COURT:  Are you -- can you come back tomorrow?

4               MR. LEIGHT:  Actually, I cannot.  I have depositions

5    scheduled tomorrow.

6               THE COURT:  How about Thursday?

7               MR. LEIGHT:  Next week, I'm free, but the rest of this

8    week, I am not.

9               THE COURT:  All right.  Let's take a brief break.  Let

10   me see if I can get this together now.

11     (Recess taken.)

12              THE COURT:  I have a potential solution for this, and

13   that is that would there be any objection to me -- I need to take

14   a look at this, but would there be any objection to me going

15   ahead and waiting until sentencing to describe the elements with

16   regard to Count 3?

17              MR. WRIGHT:  No objection, Your Honor.

18              MR. LEIGHT:  No objection Your Honor

19              THE COURT:  All right.  Very well.  That's the way I'm

20   going to proceed.

21      I left something in my office.  I'll be right back.

22     (Recess taken.)

23              THE COURT:  All right.  Next, I want to talk with you,

24   Mr. Welch, about the federal sentencing guidelines.  They are

25   advisory, meaning they're not mandatory or don't have to be

1    followed, but they'll nevertheless play an important role in this

2    case from here on out.

3        This Court will consider the factors set forth in 18 U. S.

4    C. Section 3553(a), including the advisory guidelines in

5    determining the appropriate sentence in this case.

6        I am now going to ask some questions that will help me to

7    understand your understanding, and that of Freedom Industries, as

8    to the federal sentencing guidelines.

9        Have you, on behalf of the corporation, discussed with your

10   attorney the various factors which apply in determining what the

11   sentence in this case may be under the advisory guidelines?

12               THE DEFENDANT:  Yes, I have.

13               THE COURT:  And do you understand that on this

14   information, you, Freedom Industries, cannot, in any event,

15   receive a greater sentence than the statutory maximum?

16               THE DEFENDANT:  I understand.

17               THE COURT:  I just realized that I didn't go over the

18   penalty with you, so I need to do that before we go over the

19   guidelines.

20       All right.  With regard to Count 1, Freedom Industries faces

21   a fine of not less than $2,500.00, nor more than $25,000.00 per

22   day of violation; alternatively, a maximum fine of $200,000.00,

23   or twice the gross pecuniary gain or loss resulting from

24   Freedom's conduct, whichever is greater; and a maximum term of

25   imprisonment [sic] of five years; a mandatory special assessment

1    of $125,000.00; and restitution could be ordered if it were found

2    to be applicable.

3         With regard to Count 2, a fine of up to $25,000.00 per day

4    of violation; alternatively, a maximum fine of $200,000.00, or

5    twice the gross pecuniary gain or loss resulting from Freedom's

6    conduct, whichever is greater, and a maximum term of probation of

7    five years; and a mandatory special assessment of $125.00.

8         With regard to Count 3, a fine of not less than $5,000.00,

9    nor more than $50,000.00 per day of violation; alternatively, a

10   maximum fine of $500,000.00, or twice the gross pecuniary gain or

11   loss resulting from Freedom's conduct, whichever is greater; and

12   a minimum term of probation of one year and a maximum of -- term

13   of probation of five years; and a mandatory special assessment of

14   $400.00, for a combined maximum sentence of $900,000.00, or twice

15   the gross pecuniary gain or loss resulting from previous conduct,

16   whichever is greater; 1 to 5 years of probation; a special

17   assessment of $650.00; and restitution, if it were found to be

18   applicable.

19        All right.  With that then, do you understand that, on this

20   information, Freedom cannot in any event receive a greater

21   sentence than the statutory maximums that I explained a moment

22   ago?

23             THE DEFENDANT:  Yes.  I think, under Count 1, you said

24   a five-year term of prison rather than probation.

25             THE COURT:  I meant probation.  I'm sorry.

1              THE DEFENDANT:  That's okay.  Yes, I understand.

2              THE COURT:  All right.  Do you understand that the

3    Court will not determine the sentence for this case until a later

4    date, when a Presentence Report has been completed, and both

5    Freedom Industries and the government have had an opportunity to

6    challenge the facts and analysis reported by the probation

7    officer?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  Do you understand that under a concept

10   known as "relevant conduct", this Court, in determining the Total

11   Offense Level for sentencing purposes under the guidelines, may

12   take into account any conduct, circumstances or injuries relevant

13   to the crime of which Freedom may be convicted?

14             THE DEFENDANT:  Yes, I do.

15             THE COURT:  Do you understand that after the Court has

16   determined what advisory guidelines apply to this case, the Court

17   has the authority to vary or depart from the advisory guidelines

18   and impose a sentence that is more severe or less severe than the

19   sentence called for by the guidelines?

20             THE DEFENDANT:  Yes, I understand that.

21             THE COURT:  Do you understand that in determining your

22   sentence, the Court is obligated to calculate the applicable

23   sentencing guideline range, and when I say "your sentence", I

24   mean Freedom's, and to consider that range, possible departures

25   under the guidelines, and other sentencing factors under 18 U. S.

1  C. Section 3553(a)?

2  THE DEFENDANT:  Yes, I do.

3  THE COURT:  Do you understand that if the Court accepts

4  Freedom Industries' plea of guilty and the sentence ultimately

5  imposed upon Freedom Industries is more severe than it had hoped

6  for expected, it will still be bound by its guilty plea and would

7  have no right to withdraw it?

8  THE DEFENDANT:  I do understand.

9  THE COURT:  All right.  Mr. Welch, Freedom has the

10  right to have Count 3 presented to a federal grand jury.

11  Am I right about that?

12  MR. WRIGHT:  Your Honor, frankly, I'm not sure, so we

13  put that language in there.  I think there's case law going

14  either way with a corporation, whether they have a right to an

15  indictment.  Certainly, they're not subject to imprisonment, but

16  we put the language in there about waiving whatever right it

17  might have.

18  THE COURT:  And Count 3 is a felony, correct?

19  MR. WRIGHT:  Yes, Your Honor.

20  THE COURT:  All right.  Well, I'm going to go ahead and

21  go through this way anyway based on that.

22  I want to explain the grand jury process to you, at this

23  point.

24  A grand jury is composed of at least 16, and not more than

25  23 persons.  And at least 12 grand jurors must find that there is

```
1     probable cause to believe that Freedom committed the crime with
2     which it is charged before it may be indicted.
3          Now, do you see any benefit to Freedom of having this case
4     presented to a federal grand jury?
5               THE DEFENDANT:  No, sir.
6               THE COURT:  And do you see any prejudice or
7     disadvantage to Freedom of not having the case presented to a
8     grand jury?
9               THE DEFENDANT:  No, sir.
10              THE COURT:  All right.  Your counsel has been provided
11    with a written Waiver of Indictment Form.  Have you had a chance
12    to review that?
13              THE DEFENDANT:  Yes.  Yes, I have.
14              THE COURT:  And do you understand it?
15              THE DEFENDANT:  Yes, I have.
16              THE COURT:  And have you had -- has your counsel
17    explained anything -- anything that you may have had questions
18    about regarding the Waiver of Indictment Form?
19              THE DEFENDANT:  I understand.
20              THE COURT:  All right.  And are you prepared then to
21    execute the Waiver of Indictment on behalf of Freedom Industries?
22              THE DEFENDANT:  Yes, I have.
23              THE COURT:  All right.
24              MR. LEIGHT:  May I approach?
25              THE COURT:  You may.
```

1        All right.  I'll note for the record that the defendant, by

2    Mr. Welch, has signed and dated the Waiver of Indictment Form, it

3    has been endorsed by counsel for the defendant, and I am now

4    signing it, and I will order that it be made a part of the

5    recording for this proceeding.

6        Next, Mr. Welch, I want to go over with you Freedom's trial

7    and constitutional rights.

8        Freedom Industries has the right to plead not guilty and

9    maintain a not guilty plea throughout these proceedings,

10   including at trial.

11       It has the right to be represented by counsel.

12       It has a right to a speedy and public trial by a jury

13   composed of citizens of this district.

14       It has the right to confront and have its attorney cross

15   examine witnesses and have its attorney move to suppress any

16   evidence it believes was illegally or unconstitutionally

17   obtained.

18       Freedom Industries has -- I don't know how this would apply,

19   but I'm going to go over it anyway.  Freedom has the right not to

20   testify or otherwise incriminate itself, and its exercise of that

21   right cannot be held against it.

22       Freedom has the right to have the government come in here

23   and prove its case beyond a reasonable doubt.

24       The jury's verdict would have to be unanimous.

25       The company has the right to present evidence on its own

1   behalf, I suppose to have agents testify on its own behalf at

2   trial, and to subpoena witnesses to testify for the company.

3        On behalf of Freedom, do you understand all of these rights?

4             THE DEFENDANT:  Yes, I do.

5             THE COURT:  Any of them that you don't understand or

6   that you have questions about?

7             THE DEFENDANT:  I don't.  I understand.

8             THE COURT:  And, other than Freedom's right to counsel,

9   do you understand that Freedom is giving up all of these rights

10  by entering a plea of guilty?

11            THE DEFENDANT:  Yes, I do.

12            THE COURT:  All right.  And do the officers and

13  directors of Freedom have that understanding, as well?

14            THE DEFENDANT:  Yes, they do.

15            THE COURT:  Do you understand that once a plea of

16  guilty is entered, there's nothing going to be any trial, no jury

17  verdict, and no findings of innocence or guilt based on disputed

18  evidence presented to me or to a jury?

19            THE DEFENDANT:  Yes.  I understand.

20            THE COURT:  Do you further understand that by pleading

21  guilty, Freedom Industries will waive any argument for the

22  disqualification of the U. S. Attorney's Office in this case?

23            THE DEFENDANT:  Yes.  Yes, I do.

24            THE COURT:  And, on behalf of Freedom Industries, do

25  you believe that you and the company fully understand the

1    consequences of entering a plea of guilty?

2              THE DEFENDANT:  Yes, I do, and the company.

3              THE COURT:  And, Mr. Leight, having reviewed this case

4    and the plea agreement in detail with your client, do you believe

5    that Mr. Welch and the officers and directors of Freedom

6    Industries fully understand their rights and the consequences of

7    entering a plea of guilty?

8              MR. LEIGHT:  I do, Your Honor.

9              THE COURT:  All right.  I note that there is a detailed

10   Stipulation of Facts.  Is there any objection to the Court

11   utilizing that stipulation in its consideration of a factual

12   basis for the pleas?

13             MR. WRIGHT:  No objection, Your Honor.

14             MR. LEIGHT:  The defendant has none, Your Honor.

15             THE COURT:  All right.  Very well.

16        Mr. Welch, will you please stand?

17        As to Count 1 of -- the charge contained in Count 1 of the

18   information, how does Freedom Industries plead, guilty or not

19   guilty?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  As to Count 2 contained in the information

22   and the charge contained therein, how does Freedom Industries

23   plead, guilty or not guilty?

24             THE DEFENDANT:  Guilty.

25             THE COURT:  And, as to Count 3 and the charge contained

1    therein in the information, how does Freedom Industries plead,

2    guilty or not guilty?

3              THE DEFENDANT:  Guilty

4              THE COURT:  You may be seated.

5        Your counsel has been provided with a written Plea of Guilty

6    Form.  I would ask that you go over that with him, if necessary,

7    and then I would ask him to sign it and tender it to the Court.

8              MR. LEIGHT:  Your Honor, may I approach?

9              THE COURT:  You may.

10       All right.  I'll note for the record that the defendant, by

11   Mr. Welch, has signed and dated the written Plea of Guilty Form,

12   it has been witnessed by Mr. Leight, and I will be -- I will

13   order that it be made part of the record for this proceeding.

14       Mr. Welch, is this plea the result of any threat, or

15   coercion, or harassment of either you or Freedom Industries by

16   anyone?

17             THE DEFENDANT:  No, sir.

18             THE COURT:  Is it the result of any promise or

19   inducement, other than those contained in the plea agreement?

20             THE DEFENDANT:  No, sir.

21             THE COURT:  Is Freedom Industries pleading guilty to

22   protect anyone?

23             THE DEFENDANT:  No, sir.

24             THE COURT:  Is Freedom Industries acting voluntarily

25   and of its own free will in entering this guilty plea?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Has anyone promised or predicted the exact

3   sentence which will be imposed?

4          THE DEFENDANT:  No.

5          THE COURT:  Do you understand that no one could know at

6   this time the exact sentence which will be imposed?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has Freedom's counsel adequately

9   represented it in this matters?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Has Freedom's counsel left anything undone

12   which you or the company think should have been done?

13         THE DEFENDANT:  No.

14         THE COURT:  Have you, Freedom Industries, or its

15   attorneys found any defense to the charges contained in the

16   information?

17         THE DEFENDANT:  No.

18         THE COURT:  And is Freedom Industries, in fact, guilty

19   of the crimes charged in the information?  In other words, did

20   they commit those crimes?

21         THE DEFENDANT:  Yes.

22         THE COURT:  All right.  I will find that Mr. Welch is

23   competent and capable of entering an informed plea on behalf of

24   Freedom Industries; that the plea is freely and voluntarily made;

25   that Freedom Industries and Mr. Welch understand the nature of

1    the charges and are aware of the consequences of the plea.

2         I will find that Freedom Industries and Mr. Welch understand

3    Freedom's rights and understands that Freedom is giving up these

4    rights by entering a plea of guilty.

5         I will defer a factual basis finding.

6         I will accept each of the -- the pleas of guilty to the

7    three counts of the information and will defer adjudging the

8    defendant guilty until the time of sentencing.

9         As I indicated earlier, I will ask the probation officer to

10   prepare a Presentence Investigation Report.

11        Mr. Welch, it is important that Freedom and its officers,

12   directors and agents cooperate fully with the probation officer

13   in the preparation of the Presentence Report.  If it fails to do

14   so, it could be subject to the enhancement of its sentence or the

15   forfeiture of certain sentence reductions for which it might

16   otherwise be eligible.

17        It is also important that the company not commit any

18   additional crimes between now and sentencing, as there may be

19   additional punishments imposed for committing additional crimes.

20        I will set the matter for sentencing on June 29th, 2015 at

21   10:00 a.m. and I will put my other presentencing dates in my

22   post-plea order.

23        Anything else we need to take up in this matter?

24             MR. WRIGHT:  No, Your Honor.

25             MR. LEIGHT:  No, sir.

```
 1              THE COURT:  All right.  Thank you.

 2          (Proceedings concluded at 4:22 p.m., May 1, 2015.)

 3

 4

 5    CERTIFICATION:

 6        I, Ayme A. Cochran, Official Court Reporter, certify that

 7    the foregoing is a correct transcript from the record of

 8    proceedings in the matter of United States of America, Plaintiff

 9    v. Freedom Industries, Inc., Defendant, Criminal Action No.

10    2:14-cr-00175, as reported on March 23, 2015.

11

12    s/Ayme A. Cochran, RMR, CRR              May 1, 2015

13    Ayme A. Cochran, RMR, CRR                    DATE

14

15

16

17

18

19

20

21

22

23

24

25
```